CASE 54—PETITION ORDINARY—OCTOBER 23.

# Russell, &c., v. Doyle, &c.

### APPEAL FROM LIVINGSTON CIRCUIT COURT.

1. THE LAW OF CHAMPERTY does not apply to a sale by one tenant in common to his co-tenant of his undivided interest in land which is held adversely. The reason for the statute prohibiting the sale of lands held adversely ceases in such a case, and hence the law itself must cease.

2. A PATENT for land which has previously been patented to another is void.

J. W. BUSH, J. K. HENDRICK AND J. C. HODGE FOR APPELLANTS.

1. The court, in submitting special findings to the jury, should have submitted a special finding on each point in the case. (4 Dana, 270 and 280.)

2. In *joint* tenancy, all must recover or none. (Newman on Pleading, 277, 278; 1 Mar., 39; 2 Mar., 231 and 387; 3 Mar., 19, 378 and 462; Litt. Select Cases. 420; 7 Mon., 230.)

3. Each tenant *in common* holds a separate and distinct share, and a sale by one co-tenant to another, where the land is adversely held by a third party, is as much champertous as if the sale were to a stranger to the title. (4 Bibb, 221; 1 Mar., 253; 1 Dana, 483; 4 Kent's Com., 367; 6 B. M., 457; Gen. Stats., p. 180, sec. 2; Washburne on Real

Property, vol. 3, p. 369; 2 Met., 155; 3 Met., 510; 18 B. M., 784; Lillard v. McGee, 3 J. J. M., 551; 6 J. J. M., 584; 3 Dana, 338.)

4. A champertous vendor can not maintain an action in his own name for the benefit of his vendee. (Harmen v. Brewster, 7 Bush, 357.)

5. Where the tenant has set up an adverse holding which is brought home to the landlord, if permitted to hold thus a sufficient length of time his possession will ripen into title. (Tyler on Ejectment, p. 813; Willison v. Watkins, 3 Peters, 598 )

6. Where the tenant is in possession claiming the land as his own, and a. purchaser from him has no notice that he is a tenant, the purchaser is. not estopped to deny the landlord's title. (11 Bush, 367; Kerr on Frauds, p. 250; Herman's Law of Estoppel, 371; Thompson v. Clark,. 7 Pa. St, 62; Cooper v. Smith, 8 Watts, 536; Jackson v. Davis, 5. Cow., 129.)

7. Even if the champertous deeds were delivered back to the grantors: before suit was brought, the title of the grantees was not thereby· divested. (Washburne on Real Property, vol. 3, top page 275, sec. 45;; 7 Peters, 171.)

8. Sullivant's warrant was void, because the land had previously been patented to another. (McMillan's Heirs v. Hutchison, 4 Bush, 616;. Davidson, &c., v. Coombs, &c., 5 Ky. Law Rep., 812; 9 B. M., 388; 16 B. M., 473.)

R. W. WAKE FOR APPELLEES.

1. Aside from appellees' legal title, they have clear proof of a possession for a period of 36 years without any break, making their title sufficient.

2. The law against champerty does not apply.

JUDGE HOLT DELIVERED THE OPINION OF THE COURT.

Neither of the parties to this action of ejectment have any legal paper title to the land in contest. The patent to Isaac Rucker, through whom the appellees claim title, was issued in 1838; while the warrant of Sullivant, through whom the appellants' claim, was laid in 1873. Both were void, because the land had been patented to Thomas Clay in 1799.

The special verdict finds, however, that the heirs of Rucker had a possessory title to the land when the Sullivant entry was made in 1873; and the only ques-

tion presented by this appeal, is whether they are barred of a recovery by champerty. The lower court declined to submit this question to the jury; and the appellants claim that this was error, because it appears that two of the heirs sold their undivided interest in the lands of their ancestor to a third one. One of these sales was made in 1875 and the other in 1879; and when made, the land was adversely held. It is questionable whether the sales had not been rescinded before this suit was brought; but waiving this question, the inquiry is presented whether a sale by one tenant in common to his co-tenant of his undivided interest in land, which is held adversely, is champertous.

Chapter 11 of the General Statutes provides: "All sales or conveyances, including those made under execution, of any lands, or the pretended right or title to the same, of which any other person, at the time of such sale, contract or conveyance, has adverse possession, shall be null and void. * * * Neither party to any contract made in violation of the provisions of this chapter shall have any right of action or suit thereon."

It is urged, that inasmuch as at common law a tenant in common holds by unity of possession, and has a several freehold, if he sells his interest in land, which is adversely held, to his co-tenant, it is champertous, and bars a recovery by the purchaser. In our opinion, however, the law of champerty does not apply to such a case.

The existence of the English statute upon the subject is traceable to several reasons. Among them is the

prevention of the sale of pretended titles, whereby litigation is encouraged; also the protection of the weak from the oppression of the rich and powerful with doubtful claims. Its creation is probably attributable more, however, to the exigency attending the time of enactment, and consequent upon sudden revolution, accompanied with a change of title of perhaps a considerable portion of the property of the kingdom. Those thus acquiring power and property would naturally desire to place every possible barrier in the way of a claim by the former owner, or by one claiming through him.

In our country, however, no such reason has existed. Nor under a government like ours, where caste does not exist, and titled name does not in itself confer power, is it necessary to enact a law for the benefit of the weak as against the strong. The reason for its enactment with us is to prevent litigation, and the purchase of doubtful claims by strangers to them. If the owner is not disposed to attempt the enforcement of a doubtful claim, public policy requires that he should not be allowed to transfer it to another party, and thus encourage strife and litigation. It has, therefore, been deemed beneficial to the public interest to prohibit it; and time has manifested that it works no injury to the honest man, while it may, and in fact does, often interfere with the interests of keen-sighted speculators, and prevent a practice of purchasing doubtful titles. This, then, being clearly the object of the statute, does it apply to a transfer by one tenant in common or co-owner of his undivided interest to his co-tenant? In such a case no stranger to the title is introduced, but

one who is already interested, and who may sue for the property, merely increases his interest.

Here the reason for the rule fails, and hence it fails. The champerty law was intended to apply to the purchase by a stranger of property adversely held, as this would be productive of litigation, and should not receive a strained construction, and one reaching beyond the reason for its enactment in a country where the alienation of estates is favored.

We have been unable to find any case similar in its facts to the one before us. By analogy, however, the court has spoken upon the question. Formerly, at common law, the sale of choses in action was prohibited as champertous upon the ground that otherwise litigation would be encouraged, and the oppression of the weak and ignorant fostered by transfer into the hands of the more powerful. In the case of Blackerby v. Holton, &c., 5 Dana, 520, it was said that the rule would not apply where a part owner of a chose in action transferred his interest to the co-owner, because the undivided interests of both became thus united in the one, which certainly was not conducive to litigagetion, if, indeed, it did not tend to its prevention.

Our conclusion is, that the reason for the existence of the statute requires the construction above indicated.

Judgment affirmed.