### JACKSON (city) v CAMPBELL

Ohio Appeals, 2nd Dist, Jackson Co·

Decided Feb 21, 1934

Frank Delay, City Solicitor, Jackson, for plaintiff in error.

Roy J. Gillen, Wellston, William Dunipace, Bowling Green, and Niles & Peters, Tiffin, for defendant in error.

**OPINION**

By HORNBECK, PJ.

It is claimed that the doctrine established in the decision in Mansfield v Balliett, supra, is extreme and has been so recognized by the court in **Cleveland v Standard Bag & Paper Company, 72 Oh St, 324.** This is true, but Mansfield v Balliett, though de-

cided by three members of the court only, has not been overruled. The three members of the court who did not concur noted no dissent and wrote no opinion to inform the profession or lower courts as to the reason why they did not concur in the judgment.

It is claimed that the petition avers that "the acts of the defendant hereinbefore described have been and are negligently, carelessly and wilfully done to the great and lasting damage of the plaintiff." Motion was directed to the portion of the petition quoted seeking to have it stricken, which was refused. We are unable to say that this isolated paragraph changed the gist of the action or could, in view of the whole record, have prejudiced the cause of defendant. It seems immaterial whether or not the injury complained of in the amended and supplemental petition was caused wilfully, negligently or accidentally if the nuisance was created by the defendant and continued through the period covered by the petitions. If it was of such a character as to create a new cause of action then, whether it was done negligently, carelessly or wilfully is not controlling.

The court permitted considerable evidence to be offered respecting the construction, method and manner of operation of the sewage system and it is claimed that this was prejudicially erroneous because it related to the construction and institution of a sewer system which was a governmental function of the defendant and that the failure to properly perform this duty would not subject the defendant to liability for damage, and further that if a cause of action did accrue upon the method or manner of operating the sewer as originally constructed that it was barred by the statute of limitations. However, it was incumbent upon the plaintiff to establish as a basis for his recovery that sewage which had not been properly handled was being deposited in the bed of the stream owned by plaintiff, and that it came from a source for which defendant was responsible. Thus, any defect in construction or institution of the sewer, though not the basis of the action, in conjunction with its faulty operation would tend to establish an essential element of plaintiff's case. We are content to say that we find no error in the action of the court in overruling the second branch of defendant's motion to the petition.

Considerable testimony was received tending to show that cattle which had drunk of the water in the stream in question, had died. The value of these cattle was not

given and no permission given by the court nor claim made by counsel that the jury had any right to consider the loss of the cattle as an element of plaintiff's damage. The evidence was clearly proper, as the trial court stated, "to show the extent generally of the pollution of the stream." The failure of the court to charge the jury at the time of the reception of this evidence of the purpose ·for which it was accepted was not error, and if the general charge did not in the judgment of counsel for defendant sufficiently specify the purposes for which it was received, special request should have been made to so charge.

We find no error in the manner in which the testimony of Mr. Campbell was received respecting the number of his cattle which had died, and the dates of their death and the refreshing of his recollection from the so-called memoranda. The specific dates were not material and the circumstances under which the memoranda were kept were before the jury with full opportunity to cross-examine the witnesses and to disclose the weakness, if such, of the witnesses' testimony that he had independent recollection which was refreshed by the writing.

### 4.

It is claimed that the verdict is clearly excessive. If the damages did not permit of an allowance for noxious and offensive odors as a result of the putrid matter in the stream and arising from the decaying bodies of dead animals killed by the water, there would be some difficulty in supporting the amount of the verdict, but we cannot say that the jury, in view of the scope of its inquiry and the measure of damage, returned a verdict so excessive as to indicate passion and prejudice. It is also claimed that clearly the plaintiff did not lose the entire use of his farm land but that a portion of it was used to his advantage, and further that it appeared that another, namely, The Cambria Packing Company, was responsible in part, at least, for the pollution of the stream. This was a matter for the determination of the jury and it had the right upon the testimony of the representative of The Cambria Packing Company to hold against the contention of the defendant that the company was responsible in any way for the contamination of the stream.

Respecting the competency of certain testimony tendered by the defendant as to the rental values of lands in the vicinity of the land of the plaintiff which was the immediate subject of consideration. The court properly, in our judgment, refused to receive this testimony. The inquiry in chief of one who testifies as to values should ·be directed to the land, the value of which is under consideration. The knowledge of the witness touching values of other or adjacent lands may be tested on cross examination.

It is claimed that the third defense of the answer, namely, res adjudicata, was established. Proof to establish this defense consisted of the complete record of case No. 7840, Jackson County, Common Pleas Court, tried many years ago, wherein the same parties were parties and there was claim for damages for injuries charged to have been sustained by the pollution of the stream of plaintiff by the defendant. A fair consideration of this record is convincing that, except in the particular that the parties were the same, there is neither identity of subject matter nor issues. The cause of the plaintiff in the instant action is grounded upon a new cause of action and fresh damages, the recovery of which damages could in no event have been barred by the judgment in the cause of action plead as constituting res adjudicata. It follows that, inasmuch as plaintiff's cause of action was for fresh damages and upon a new cause of action, the defense of the statute of limitations was not effective as a bar to the plaintiff's right of recovery.

Objections are made to the admission of testimony of Oscar Deemer, as to the conditon of cattle drinking from· the· stream, and the fact that there were no fish in the stream; of Mr. Evans as to an experiment on a horse in 1916 and 1917; of Mr. Reigle; of Mr. Campbell, page 275 and 276 of the record and of Mr. Urbain as to the construction and operation of the sewage disposal plant; and as to the diseases of cattle; and of Mr. Campbell at pages 669 and 670 of the record. All of this testimony was competent, pertinent and relevant.

Objection is urged to the action of the trial·court permitting an amendment to the petition limiting the time for which damages were sought from the first day of August, 1926, and changing the words "market value" to "rental value" in line 31 of page 3 of the amended petition. We do not find that the trial court abused its discretion in permitting this amendment. There was enough in the subject matter of the averments of the amended petition, independent of the amendments permitted by the court, to justify the conclusion that it was not a departure and the stating of a new and different cause of action. The measure of damages was incidental to the cause of action stated. It does not appear that the defendant was denied the oppor-

tunity to meet the change in the proof respecting the measure of damage as to rental value.

No prejudicial error appears in the giving of plaintiff's special charges Nos. 1 and 3.

Exception is taken to the general charge in that the court in defining the measure of damages said that plaintiff was entitled to recover the depreciation, if any.

"in the fair and reasonable market rental value of the property during the time complained of, together with such a sum as will fully and fairly compensate him for any other special damages he has alleged in his petition and proven he sustained as a proximate result of the pollution of the water of Salt Creek. In determining the depreciation of the fair and market rental value during the time complained of, you must then determine the rental value without the stream being polluted—that is, what was the rental value of the property during the time complained of if the water of Salt Creek came to it in its natural purity, and then determine the rental value of the property with the water of Salt Creek polluted to such an extent as to render it unfit for domestic use, stock raising and farming, and the difference between the two rental values is the amount the plaintiff is entitled to recover, plus, of course, any other special and substantial damages he has proven he sustained."

It is urged, first, that the court erred in permitting the jury to determine the rental value of the property as if the water of Salt Creek came to it in its natural purity; that in no event could the water have come to Salt Creek upon the premises of plaintiff in a pure state. The words "natural purity," in our judgment, is a proper expression for the condition of the water as the jury had a right to find it would have been had there been no deposits to contaminate it other than from natural causes. In the view of the case from plaintiff's theory, the water would have been in such state of purity as would be contemplated by the expression "natural purity" but for the contamination which was thrown into the stream by the defendant.

The further objection to the general charge and a serious one on this record, is found in the instruction of the court to the effect that the measure of damages was the difference in the rental value of the property because of the pollution of the stream for which defendant was responsible and its fair rental value had such con-

tamination not been carried into the water. The charge as given is in conflict with the express language of a part of the 4th syllabus of **City of Norwood v Shean, Exr., 126 Oh St, 482,** and particularly that part which we set black face:

"Where injury to or appropriation of real property arising out of the deposit of sewage from a sewer controlled and maintained by a city is temporary only, and such condition has been abated by the city prior to the institution of an action for damages, the measure of damages if the property be rented or held for rent, is the diminution in its rental value during the continuance of the injury, but, **if it be occupied by the owner, it is the diminution in the value of the use of the property during such period."**

The real estate, through which the polluted stream in the instant case flowed, was in the occupancy of the owner. The court did not charge that the measure of damage was the diminution in the value of the use of the property during such period, but on the contrary charged that the measure was the diminution in its rental value. According to the letter of that portion of the syllabus in black face which we have just quoted, the court erred in its charge. It, therefore, becomes necessary to determine whether or not under the facts in the record it can be said that such error was not prejudicial to the rights of the defendant.

Norwood v Sheen is a well-considered opinion, citing and discussing pertinent authorities in many jurisdictions. Consideration of the rule touching the measure of damages where there is suit for temporary injury to real property covers several pages of the opinion—490 to 496, inclusive. Judge Allen discusses the rule where the damages claimed are of a permanent character contrasted with those where of a temporary nature and holds that where, as in the case under consideration, the damages were of a temporary nature it was reversible error for the court to receive testimony as to the diminution in the value of the property affected. This, together with the charge of the court, constituted error to which attention was directed in the opinion.

At page 495 it is said:

"As heretofore stated, since this was a temporary taking and injury, only, the plaintiff could only recover the value of the use of the land from the time it was occupied by the city of Norwood for the pur-

pose of discharging the sewage thereon. Evidence upon diminution in rental value may be, and often is, admissible as bearing upon diminution in use value. But in this case, the court by its improper admission of evidence on selling value and by its charge upon rental value and depreciation of comfortable enjoyment encouraged the jury to combine three recoveries for the one damage. There cannot be in this case a three-fold allowance, one for depreciation in value of the lands, one for personal discomfort by the occupants and one for diminished rental value of the lands."

The court then states the true rule where the damages are to be determined upon a temporary injury to the real estate. Therein is found that portion of the syllabus which we have quoted.

Although Judge Allen concedes that there is variance in the rule in different jurisdictions and the authorities are evenly divided, she definitely bases the rule which she sets forth upon City of Pikeville v Riddle, 200 Ky., 395 (255 SW, 63). Examination of the decision in this case discloses that the court there relied upon and cited as authority for the pronouncement of the rule Ewing v City of Louisville, 140 Ky., 726 (131 SW 1016). And in Ewing v City of Louisville, wherein the rule is again stated, reliance is placed upon Pickerill v City of Louisville, 125 Ky., 213. The facts in this case disclose that it was an action by Pickerill, who owned a house and lot upon which it was claimed the defendant, the City of Louisville, had caused large and unusual quantities of water to back up, on account of which plaintiff's coalhouse, stable and privy upon the premises could not be reached or used by himself or family for much of the time during the year mentioned in the petition; that these inundations of the lot made his fence fall and decay, caused the vault of the privy to overflow, and its contents to be scattered over the premises, which, with the stagnant water and other excrement and filth brought thereon by the overflows, created bad odors, bred disease, and endangered the health of his family. Upon the issues drawn the cause came on for trial and the court charged the jury that the measure of damage for the creation of the nuisance was a diminution in the rental value of the premises by reason of the nuisance so created. The jury returned a verdict against the claimant, Pickerill, and from the judgment on this verdict the appeal was prosecuted.

The court based its reversal upon the proposition that because of the statement of the rule as announced by the trial court, inasmuch as the plaintiff was in the occupancy of his premises and they were not rented that the jury may have determined that there was no diminution in rental value; that if the jury had been given the rule of the diminution in value of the use of the property it might have found for the plaintiff. We have pursued these authorities not in any sense to criticize the rule of our Supreme Court, but to establish that in the instant case in all probability no prejudice resulted to the defendant because of the rule enunciated by the trial court. Of course, if we had the time to review the cases a nice question might be made if the rule has application to the facts in this case wherein the property affected is farm lands, and while occupied, it is not occupied in the sense that an owner who lives in a dwelling upon a lot with fences and buildings thereon would occupy it.

In this case, in our judgment, the loss of the value of the use and occupancy could not have been any less than the loss of rental value. It is possible that it might have been greater. As Judge Allen says in the opinion in Norwood v Sheen, rental value is helpful in fixing the value of use and occupancy. In this case it is difficult to see how practical application of the rule could have been made to better advantage than by accepting testimony touching the rental value of the lands involved. If any of the lands which plaintiff claimed had been damaged were used by him it was simpler for the jury to determine what proportion thereof had been so used and reduce the extent of his damage upon the basis of rental value than it would have been had the evidence been restricted to the value of use and occupancy. Upon a fair consideration of this record, we are convinced that no prejudicial error resulted to the defendant in the failure of the trial court to follow the letter of the rule of damages as set forth in Norwood v Sheen, supra.

It should also be observed that the trial court did not have available for his guidance the opinion in Norwood v Sheen when this case was tried.

The charge in its entirety was a fair exposition of the law of the case and fully presented to the jury the theory of the defense as set forth in the several defenses of its answer.

Finding no error to the prejudice of the defendant, the judgment will be affirmed.

KUNKLE and BARNES, JJ, concur.